95 So.2d 420 (1957)
HANOVER REALTY CORP., Appellant,
v.
Sam CODOMO, Appellee.
Supreme Court of Florida, En Banc.
May 8, 1957.
Rehearing Denied June 13, 1957.
*421 Schwarz & Zinn, and Bart L. Cohen, Miami, for appellant.
Rothenberg & Burris, Miami Beach, for appellee.
ROBERTS, Justice.
The appellant, defendant below, owned property upon which it proposed to construct a large shopping center. The rentals of the buildings proposed to be constructed by defendant were handled exclusively by a rental agency in New York City headed by one Berkson. The appellee, plaintiff below, is a real estate broker. The negotiations which culminated in the instant suit for a broker's commission filed by plaintiff against defendant were initiated by plaintiff on June 18, 1953, when he wrote defendant's rental agent, as follows:
"* * * I have a client who would be interested in leasing approximately forty thousand square feet, one or two stories for a furniture store. Please send me terms and length of lease required. Also, information that would apply to any type of business in addition to that of this particular client."
The defendant's rental agent Berkson replied, under date of June 19, 1953, quoting terms of $3 per square foot and stating that a 21-year lease was desired. A copy of the proposed building plan was enclosed. According to plaintiff's statements contained in his deposition, he then called Berkson on the telephone and made the following "agreement" as to his broker's commission:
"Q. Tell us what you said to him and what he said to you with reference to commissions. A. I informed him that I was a broker, as he already knew in my inquiries, and what is their commission arrangements with other brokers. He said, `We pay the customary commission that you are entitled to,' and I, realizing that they are a large New York brokerage house and they recognize a broker, that they would pay the local brokerage fees after he said he would pay the customary fees, so from that time forward there was never any discussion about commission.
"Q. Did you discuss what are considered to be the local or customary fees in leases? A. No, I didn't. I figured they would know. They are building a big project here.
"Q. At that time did he discuss with you or caution you with reference as to what must be done in order for you to be entitled to a commission? A. No, he did not."
Plaintiff also stated in his deposition that no further reference to his commission was made until he received a letter from Berkson, dated July 23, 1953, in which the following statement was made:
"I want it distinctly understood that you are not to be entitled to any commission on this negotiation until the leases have been actually signed by all parties concerned, and if, for any reason, these leases are not signed, you will not have any claims against either the owners of the property, or Mr. William W. Kamm and myself as agents."
Plaintiff replied to Berkson's letter under date of July 25, 1953, stating among others the following:

*422 "It is distinctly understood that I am not entitled to any commission on these negotiations unless the leases are executed."
In the meantime negotiations by telephone and by letter between plaintiff on behalf of his client, one Richardson, and Berkson on behalf of defendant had taken place and a conference among Berkson, plaintiff and Richardson had been held in New York City. The trial judge, who tried the case without a jury, found that prior to Berkson's letter of July 23, noted above, Berkson had made an offer on behalf of defendant to enter into a 21-year lease of 20,000 square feet of space in either a one-story or a two-story building to Richardson on stated terms, and that this offer had been accepted by plaintiff on behalf of Richardson in a telephone call made by plaintiff to Berkson on July 23, 1953; and that, thereafter, defendant arbitrarily refused to enter into the lease agreement with Richardson "which had been completely negotiated, approved and accepted by both parties thereto." He concluded that plaintiff had earned his commission when he brought about a meeting of the minds of the parties as to the terms of lease, and that "[t]he condition to payment of Plaintiff's commission inserted for the first time in the Berkson letter of July 23rd was not binding upon Plaintiff, nor was Plaintiff's letter of July 25th in which he partially accepted such condition. It was without consideration, as Plaintiff's commission was already earned on meeting the terms of the listing through the production of a tenant ready, willing and able to perform." The trial judge was also of the opinion that even if the subsequent written agreement were to be considered a part of the contract of the parties, "performance thereof was excused by the conduct of the Defendant and such condition did not contemplate in law or in fact an arbitrary refusal to consummate the transaction on the part of the Defendant."
From a judgment awarding plaintiff a brokerage commission in the amount of some $25,000, the defendant has appealed.
In support of the trial judge's conclusion that plaintiff was not bound by his written agreement because it was without consideration, plaintiff relies on Miller v. Moylan, Fla. 1954, 72 So.2d 380, 381. In the Miller case, the broker was given a written listing by the owner "to find a purchaser" for the owner's property and was promised compensation "for finding a purchaser." The listing provided for the payment of a portion of the commission "when deal is closed" and portions of the balance upon payments of the first two installments of the purchase price, and in a subsequent letter from the owner to the broker it was stipulated that the broker was to be paid a commission "for making the sale * * *". The broker found a purchaser ready, willing and able to buy upon the terms stated in the listing, but the sale was not consummated because of the default of the owner-seller. This court held that the language used in the subsequent letter, quoted above, did not transform the original written listing "from one to procure a purchaser to one to secure a binding contract of sale, * * *" and affirmed the lower court's judgment awarding the broker his commission under the rule of Knowles v. Henderson, 156 Fla. 31, 22 So.2d 384, 169 A.L.R. 600, referred to hereafter.
The facts in the instant case are different. While the testimony given by the plaintiff at the trial is not in the record, it is presumably not materially different from that contained in his deposition. As shown therein, the only agreement he had with Berkson was that he would receive "the customary commission" without any express agreement as to the terms of his employment. There is nothing sacrosanct about a broker's contract. As in the case of any other contract, there must be a meeting of the minds of the parties  a "reciprocal assent to a certain and definite proposition." *423 Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498, 502. And we know of no alchemy by which an ambiguous oral agreement to pay a commission to a broker representing a prospective lessee can be transformed into a general contract of employment of the broker to find a tenant ready, willing and able to lease the owner's property. There is, then, no basis for the trial judge's conclusion that the plaintiff had earned his commission "on meeting the terms of the listing through the production of a tenant ready, willing and able to perform"; and it must be held that plaintiff is bound by the terms of the letters between him and Berkson memorializing their understanding of their previous oral agreement  that is, that the plaintiff would not be entitled to his commission unless the lease with Richardson was actually executed. Cf. Kay v. Sperling, Fla. 1956, 83 So.2d 881.
Only one question remains, and that is: Does the rule of Knowles v. Henderson, supra, 156 Fla. 31, 22 So.2d 384, 385, 169 A.L.R. 600, and similar cases, justify the trial judge's holding that even if the written agreement were to be considered a part of the contract of the parties, "performance thereof was excused by the conduct of the Defendant and such condition did not contemplate in law or in fact an arbitrary refusal to consummate the transaction on the part of the Defendant." We do not think it does. It was held in the Knowles case that "* * * where a broker in good faith and in reliance upon his contract procures a purchaser ready, able and willing to buy the property in accordance with the terms fixed by the seller, and before the broker can effect the sale or procure a binding contract of purchase the seller defeats the transaction, not for any fault of the broker or purchaser but solely because the seller will not or cannot complete the transaction, then and in such case the broker is entitled to his commission, if the customer remains ready, able and willing to purchase although the sale has not been fully completed; the strict terms of the contract between the principal and broker as to completing the sale or procuring a binding contract of purchase from the customer being deemed waived by the principal."
This is simply an application to broker's contracts of the general rules of contract law that "where a party contracts for another to do a certain thing, he thereby impliedly promises that he will himself do nothing which will hinder or obstruct that other in doing the agreed thing," 7 Fla. Jur., Contracts, Sec. 145, and that "one who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its nonperformance." Ibid, Sec. 148, p. 215. But we know of no case where these rules have been applied to permit recovery in the face of a specific agreement to the contrary. As pointed out in Kay v. Sperling, supra, 83 So.2d 881, 882, where the relationship of the parties was similar to that in the instant case and the broker agreed that "unless and until a deal is consummated, the contemplated lessor is not obligated for any commission," in none of the cases allowing recovery by the broker where the owner refused to complete the transaction "had the party sought to be held liable for the commission protected itself with a provision similar to that embodied in the contract in the case at bar. None of these cases holds that a broker can recover in the face of a specific contract to the contrary."
While, as has been indicated above, the testimony given by plaintiff and Richardson at the trial was not recorded and thus is not before this court, the deposition of plaintiff covered all the essential facts relied upon by him in support of his case. As shown by his statements therein, quoted above, and the letter agreements memorializing their understanding as to his commission, the only obligation ever assumed by the owner was to pay him a commission if the leases were actually executed. The plaintiff's account of the negotiations, as *424 set forth in his deposition, and the documentary evidence in the form of correspondence between plaintiff and Berkson, show unequivocally that plaintiff acted throughout the negotiations as the agent of Richardson, just as Berkson acted as the agent of the owner. The agreement to pay plaintiff a commission was sufficient to remove from him the onus of "volunteer" and justify a recovery on a quantum meruit basis, had a lease actually been consummated between Richardson and defendant; but we find in the circumstances here no justification for the application of the rule of Knowles v. Henderson, supra.
Accordingly, it was error to enter a judgment in favor of the plaintiff, so the judgment should be and it is hereby reversed with directions to dismiss his complaint.
It is so ordered.
TERRELL, C.J., and HOBSON, DREW, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., dissents.