**LANGFITT v. POITRAS, et al.**

No. 73-253.

Circuit Court, Indian River County.

June 27, 1974.

George H. Moss of Jones, Paine & Foster, West Palm Beach, for the plaintiff.

Sherman N. Smith, Jr., of Smith, Heath & Smith, Vero Beach, for the defendants.

D. C. SMITH, Circuit Judge.

*Final judgment:* This action was tried before the court. The plaintiff broker is suing the defendants, some of the owners, for a real estate commission.

The evidence shows that the defendants listed property for sale with the plaintiff at a price of $6,250,000 net to the owners. The plaintiff produced a purchaser for the property for $6,400,000, the $150,000 representing the broker's commission. The purchasers and the broker executed a contract for sale for $6,400,000 (plaintiff's exhibits 3 and 6 in evidence) and in a day or so it was executed by two of the owners who were in Florida and then it was forwarded by mail for execution by the remaining owners. This contract will hereinafter be referred to as the May contract.

Simultaneously with the execution of the May contract by the purchasers, an addendum to that contract was executed by the purchasers and the broker, and a broker's agreement was executed by the broker, and they were taken and mailed with the May contract to the owners for execution (plaintiff's exhibits 4 and 5 in evidence respectively).

Before the May contract was executed by all the owners, another contract for sale involving the same property for $6,650,000 net to the owners was executed by another purchaser and some of the owners (plaintiff's exhibit 7 in evidence) and forwarded to the remaining owners for execution. This contract will be hereinafter referred to as the Eisler contract. The remaining owners executed both contracts, the addendum and the broker's agreement and returned them to the owners' attorney.

The May contract provided for a $50,000 forfeiture in the event the purchasers did not close according to the terms of the contract, while the Eisler contract called for a $65,000 forfeiture in the event the purchaser did not close according to the terms of the contract. One or more of the owners to whom the May contract was mailed for execution felt that $50,000 was an inadequate amount subject to forfeiture as liquidated damages in a contract involving a total of this magnitude. The owners also learned that closing by the purchasers under the May contract was contingent upon the purchasers obtaining a change in zoning and the owners had reason to believe that there was a question as to whether a change in zoning could be obtained. Further the owners had reason to believe that Eisler planned to develop the property without a change in zoning. The owners instructed their attorney to deliver the Eisler contract and to advise the broker and the purchasers in the May contract that they, the owners, had declined their offer of purchase (defendants' exhibit 7 in evidence).

It is significant to note that the addendum to the May contract (plaintiff's exhibit 4 in evidence) in paragraph 1, provides — "If the sellers refuse to close the sale, the letter of credit shall be returned to the buyers." This indicates that the owners were retaining their right to reject the offer being made by the buyers until all the owners signed the contract, the addendum and the broker's agreement, and delivered an executed copy thereof to the buyers.

From all of the evidence, the court finds that the greater weight of the evidence shows that all the parties knew or should have known that the May contract, the addendum and the broker's agreement would not be binding until executed by all parties thereto and an executed copy thereof was delivered to the purchasers. This never occurred.

> "Generally delivery is an essential element of the execution of a contract in writing, and such a contract is not binding unless it is delivered." 17 C. J. S., *Contracts*, §64, page 738.

While it is true that the May contract met the listing price, a substantial condition or detail of the sale, i.e., the amount to be paid upon the execution of the contract, was never agreed upon by all of the parties. Fentos v. Bancroft Hotel Associates, Inc., 3 DCA 1972, 265 So.2d 67; Kernjack v. Joe Cotton Realty Corporation, 2 DCA 1968, 216 So.2d 18; and McAllister Hotel v. Porte, Supreme Court of Florida, 1957, 98 So.2d 781.

In addition this is a case where we have a specific agreement concerning the payment of a broker's commission.

The broker's agreement (plaintiff's exhibit 5 in evidence) provides —

"The prospective purchasers and the owners are now in the process of negotiating with a view of entering into a written contract for the purchase and sale of that property for the total cash purchase price of $6,400,000, of which sum the amount of $150,000 is agreed to be the broker's commission.

"In the event that sale is consummated and the owners receive the total purchase price, they agree to pay simultaneoulsy with such receipt the sum of $150,000 to the broker as his commission. If that sale is not consummated, which term includes the possibility of forfeiture by the purchasers as liquidated damages as provided for in the contract, the broker shall receive nothing."

The words "consummate" and "simultaneous" have generally recognized meanings, i. e., to finish, to complete, and at the same time, respectively.

The provisions of the broker's agreement, supra, are not couched in such terms as to require the astuteness of the proverbial "Philadelphia lawyer" to interpret them. They are such that any reasonably experienced broker or layman could or should be able to comprehend their meaning. Curran & MacDonell, Inc. v. Pearre, 1 DCA 1967, 202 So.2d 858; Mark v. Hahn, Supreme Court of Florida, 1965, 177 So.2d 5; Plumbing Industry Program, Inc. v. Good, 3 DCA 1960, 120 So.2d 639; and Hanover Realty Corp. v. Codomo, Supreme Court of Florida, 1957, 95 So.2d 420. No sale to the purchasers produced by the plaintiff was consummated.

There is no evidence showing that the defendants acted arbitrarily, capriciously, in bad faith or unreasonably in failing to consummate the first contract. A judgment must accordingly be entered for the defendants.

Upon consideration, it is ordered and adjudged — (1) That the plaintiff, David R. Langfitt, take nothing by this action and that the defendants, Edward J. Poitras, Edward W. Paitras and Dorothy W. Poitras, individually and as trustees, go hence without day; service of process never having been perfected on the defendants, James W. Poitras, Carl W. Walter and William W. Simmons, individually and as trustees. (2) That the plaintiff and the defendants shall each bear the costs which he/they have incurred herein, respectively.