343 So.2d 1353 (1977)
HARBOUR INN, INC., et al., Appellants,
v.
William KAGAN et al., Appellees.
No. 76-593.
District Court of Appeal of Florida, Second District.
April 1, 1977.
*1354 Richard L. Watkins of Fassett & Watkins, and Jeffrey R. Garvin of Moorey, Seals & Garvin, Fort Myers, for Harbour Inn, Inc. and Kenneth Lurtz.
David A. Wolfson, Miami, for appellees.
HOBSON, Acting Chief Judge.
Appellees filed a complaint against appellants for damages arising out of a contract between the parties whereby appellees were to procure a valid written loan commitment in the amount of $10,000,000 and secure a limited real estate joint venture agreement between American Real Equities Corporation, or a subsidiary thereof, and Harbour Inn, Inc. and Collage, Inc., two of the appellants herein.
Count I of the complaint alleged that appellees had performed under the contract and that they obtained a qualified organization under the terms of the contract to be a member of the joint venture and were successful in obtaining a loan commitment from several lending institutions contingent upon the verification of certain facts and exhibits which were to be furnished to them by appellants, Harbour Inn and Collage, as provided for in the contract. The complaint further alleges that the appellants breached the contract in that they did not furnish the exhibits as required, thereby preventing them from successfully completing the contract and earning their commission as provided for in the contract.
Count II of the complaint realleges the above allegations and prays for damages under the quantum meruit theory.
The appellants answered and depositions were taken. Both appellants and appellees filed motions for summary judgment with attached affidavits. The trial court entered a partial summary judgment for the appellees on liability under Count II on the quantum meruit theory. The appellants appealed this partial summary judgment. In appellants' brief they contend that the trial court erred in not entering a summary judgment in their behalf on both counts of the complaint. However, the only partial summary judgment appealed is in favor of appellees on Count II of their complaint as to liability. Therefore, the question of the denial of appellants' summary judgment is not before us as to Count I.
The contract sued upon provided in part as follows:
"PROFESSIONAL SERVICES. For and in consideration of the sum of One Thousand ($1,000.00) Dollars, non-refundable deposit paid by Collage to Commercial Mortgage, receipt of which is hereby acknowledged, Commercial Mortgage agrees to provide the professional service of Mr. William Kagan, President, for the purpose of the procurement of a valid written loan commitment and loan endorsement & guarantee by American Real Equities Corporation.
(a) The deposit shall be credited in full as part payment on the brokerage fee earned as hereinafter defined."
* * * * * *
"FURNISHING OF EXHIBITS. HII & Collage agrees to furnish all necessary exhibits required including but not limited *1355 to: Current M.A.I. appraisal, plat survey, plans, specifications, site plan, aerial photo, street photo, location map, current financial statement on corporation and individual Investors signing personal endorsement, cost of construction estimates, building of construction Contractor, his Bonding Corporation insuring the completion of construction, projected income and expenses of project, letter of evidence that property is zoned and approved for its intended use, letter of evidence that all utilities will be available to tie in for use at the site, and letter ascertaining to present title holder of record."
* * * * * *
"DISBURSEMENT OF EARNED FEE. This Agreement constitutes an irrevocable authority to any title company or attorney or Project Manager handling the settlement of the loan to disburse the earned fee as hereinafter set forth, from the proceeds of the financing, settlement of the loan and construction draws, to the order of Commercial Mortgage and Mr. William Kagan."
* * * * * *
"PAYMENT FOR SERVICES RENDERED. It is expressly understood that all payments made for Financial or Real Estate Brokerage Fees earned or for professional services rendered by either Commercial Mortgage or Mr. William Kagan, will and shall only be paid upon the satisfactory completion and execution of the hereinbefore referenced Limited Real Estate Joint Venture Agreement and the actual loan consummation and the manner as hereinafter described and defined." (emphasis added)
The appellants contend that 1) the $1,000 paid for professional services which was nonrefundable is the entire compensation due appellees; 2) the appellees are not entitled to any additional fee in that additional fees were payable only upon the satisfactory completion and execution of the limited real estate joint venture agreement and the actual loan consummation; and 3) the appellees' fees were to come from the proceeds of the fund created by the loan, and since the fund did not materialize appellees are not entitled to recover either for breach of contract or on the quantum meruit theory.
In Hanover Realty Corp. v. Codomo, 95 So.2d 420 (Fla. 1957), our Supreme Court stated the law as to brokers' fees as follows, at page 423:
"... `[W]here a party contracts for another to do a certain thing, he thereby impliedly promises that he will himself do nothing which will hinder or obstruct that other in doing the agreed thing,' 7 Fla.Jur., Contracts, Sec. 145, and that `one who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its nonperformance.' Ibid, Sec. 148, p. 215. But we know of no case where these rules have been applied to permit recovery in the face of a specific agreement to the contrary. As pointed out in Kay v. Sperling, supra, [Fla.,] 83 So.2d 881, 882, where the relationship of the parties was similar to that in the instant case and the broker agreed that `unless and until a deal is consummated, the contemplated lessor is not obligated for any commission,' in none of the cases allowing recovery by the broker where the owner refused to complete the transaction `had the party sought to be held liable for the commission protected itself with a provision similar to that embodied in the contract in the case at bar. None of these cases holds that a broker can recover in the face of a specific contract to the contrary.'"[1] (emphasis ours)
Also, in Hanover, supra, it was held that the broker could not recover on the quantum meruit theory unless the lease in that case had actually been consummated.
In the case before us no additional fees were to be paid unless there was a satisfactory completion and execution of the limited *1356 real estate joint venture agreement and the actual consummation of the loan. The appellees admit that this was not done. Further, the appellee Kagan stated in his deposition that he had been a real estate broker and mortgage broker for approximately forty years and that his forty years in the business was worth a capitalization of a minimum of $5,000,000. Therefore, there was no doubt that he was an experienced and successful mortgage broker.
In addition, the appellees received $1,000, nonrefundable, to provide the professional services of Kagan, who was president of Commercial Mortgage, for the purpose of procuring the loan commitment and guarantee by American Real Equities Corporation, which he did successfully and for which he was compensated.
For the reasons stated above the partial summary judgment is reversed and the trial court shall enter a summary judgment on count II of the complaint for the appellants. The cause is remanded for further proceedings on the remaining count.
SCHEB, J., concurs.
GRIMES, J., dissents with opinion.
GRIMES, Judge, dissenting.
In Hanover Realty Corp. v. Codomo, supra, the listing provided:
"... and if, for any reason, these leases are not signed, you will not have any claim against either the owners of the property, or Mr. William W. Kamm and myself as agents."
The court held that this was a specific agreement which permitted the owner to arbitrarily refuse to close without liability for a brokerage commission. However, several years later the same court in Mark v. Hahn, 177 So.2d 5 (Fla. 1965), construed a listing which contained the following statement:
"... and that commission will be due and payable only if and when title is actually closed."
The court stated:
"The listing on Codomo is couched in language which makes it reasonably clear that the owner might arbitrarily at any time before the leases were signed refuse to go through with the deal and thus relieve himself of any liability for payment of a commission. On the other hand, it does not appear quite so clearly that the seller reserved unto herself the right to renege in the instant suit, indeed there is room for the implication that the seller would do nothing to interfere with the actual closing of the deal... ."
Because of some additional facts in the case, the court declined to rest its decision for the broker entirely upon semantics. However, the court went on to state:
"... We are impelled before turning from the subject discussion to say, by way of caveat, that in Codomo when we used the expression `specific agreement to the contrary' we meant exactly that. We did not mean that a listing could be worded in such manner as to require the astuteness of the proverbial `Philadelphia lawyer' to determine that the seller intended to reserve until himself the right to change his mind or back out arbitrarily at any time he might see fit and thereby avoid payment of a commission. Although some brokers are also lawyers, many, many of them are not. Perhaps most lawyers would suspect from the language used in the listing in this case that the seller meant to reserve the right to refuse to go through with the deal if she should so elect. Few laymen would have the same reaction. We think the `specific agreement' to which we referred in Codomo should be expressed in language which would be readily understood by a layman and leave no room for doubt. The specificity of such an agreement should be precisely formulated, explicit, positive, direct and should admit of no misunderstanding. The agreement should clearly put the lay-broker on notice that he might expend both effort and substance in vain."
In my judgment, the listing in the instant case more nearly compares with the one in Mark v. Hahn. Were I in the position of *1357 the appellees, I might understand that if the loan was not consummated because of circumstances reasonably beyond the appellants' control (such as title defects or zoning problems), I would not be entitled to a commission. However, not being the "Philadelphia lawyer" referred to in Mark v. Hahn, I doubt that I would have understood that this provision allowed the appellants to escape a commission by arbitrarily declining to go forward with the closing of the loan. This is particularly true where, as here, the loan fell through because the appellants refused to furnish certain exhibits which they had specifically agreed to furnish in the brokerage contract. In view of the fact that appellees would have been entitled to $750,000 if the transaction had closed, I am not persuaded that because the appellees were permitted to keep $1,000, this meant that the contract contemplated the possibility of an arbitrary withdrawal by the appellants.
I believe the trial court correctly ruled that the appellees should be entitled to recover on a quantum meruit basis for their efforts spanning a period of more than six months. Therefore, I respectfully dissent.
NOTES
[1] Accord, Warter v. Bancroft Hotel Associates, 285 So.2d 676 (Fla. 3d DCA 1973) and Curran & MacDonell, Inc. v. Pearre, 202 So.2d 858 (Fla. 1st DCA 1967).