DOLPHINE MANUFACTURING,
INC., Appellant,

v.

Thomas A. TEHAAR and Bill
Krantz, Respondents.

No. C7–86–1627.

Court of Appeals of Minnesota.

April 21, 1987.

Review Denied June 25, 1987.

Joseph F. Lulic, Hanson, Noel & Lulic, Minneapolis, for appellant.

Willard L. Converse, Peterson, Bell & Converse, St. Paul, for respondents.

Heard, considered, and decided by LANSING, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

Century Indemnity brings this action under its insured's name, appealing the summary judgment granted to respondents Tehaar and Krantz and seeking to enforce its subrogation rights. We affirm.

## FACTS

On September 15, 1984, Tehaar and Krantz (the tenants) entered into an agreement to lease commercial space from Dolphine Manufacturing. The lease provided, in part, that the "[l]andlord waives its right of subrogation for damages to the building, of which the leased premises are a part * * up to the amount of insurance [coverage]."

On January 12, 1986, a fire occurred at the leased premises. Dolphine and the tenants both suffered losses. Dolphine received insurance proceeds from its insurer, Century Indemnity, totaling $229,473. The record does not disclose whether the tenants' negligence caused the fire as Century alleges.

Century brought an action in Dolphine's name alleging that, under its subrogation rights, the tenants were liable for the damages paid to Dolphine under the insurance policy. The tenants brought a motion for summary judgment, arguing that the lease provision, in effect, waived Century's subrogation rights. The trial court granted summary judgment, as a matter of law, in favor of the tenants.

## ISSUE

Did the trial court err in granting summary judgment to respondents based on the terms of the lease?

## ANALYSIS

■ On appeal from summary judgment, this court views the evidence in the light most favorable to the party against whom the motion was granted and determines whether the trial court erred in its application of the law. *Lindner v. Lund,* 352 N.W.2d 68, 70 (Minn.Ct.App.1984).

■ Generally, an agreement which releases a contracting party from liability for its own negligent acts also defeats the subrogation rights of the insurer:

> Such exculpatory agreements releasing a contracting party from liability caused by his own negligence are not uncommon in modern-day construction contracts. They are designed to distribute the burden or risks inherent in the performance of such contracts in such a way as to eliminate foreseeable disputes and to reduce the costs of construction. Such agreements do not contravene public policy, are valid, and are enforceable.
>
> * * * [A]n unambiguous and broad exculpatory agreement of the kind used in this case defeats the subrogation rights of the insurance company against the contractor even though it was made subsequent to the issuance of the policy and prior to the loss.

*Great Northern Oil Co. v. St. Paul Fire & Marine Insurance Co.,* 291 Minn. 97, 100–101, 189 N.W.2d 404, 407 (1971) (footnote and citations omitted); *see also* 16 G. Couch, *Cyclopedia of Insurance Law* § 61.191, at 247 (2d ed. 1983) (footnotes omitted); 6A J. & J. Appleman, *Insurance Law & Practice* § 4092, at 239 (rev. ed. 1972) (footnotes omitted) (both treatises noting that a contractual agreement releasing each party from liability for its negligent acts destroys the subrogation rights of the insurer).

Century acknowledges the general rule, but argues the express wording of the lease did not release each party from liability. Since the contract did not expressly hold the parties harmless for their negligent acts, Century claims its subrogation rights still exist.

The tenants argue that a landlord has no subrogation rights; therefore, in practical operation and in conformance with the contents of the entire lease, the contractual provision should be interpreted as holding each party harmless and, in effect, waiving Century's subrogation rights. A commercial real estate leasing agent and consultant for various tenants under commercial leases stated in his affidavit that the waiver of subrogation as seen in this lease "is commonly found in today's commercial leases." The purpose of such a mutual waiver is to "prohibit either the landlord or the tenant from suing the other for any insured loss caused by the other." The clause is also intended to promote the parties' business interests by avoiding overlapping coverage. Comment, *Defeat of Subrogation Rights,* 56 Minn.L.Rev. 274, 277 (1971).

■ Although the lease was inartfully drafted and failed to specify these purposes, the record and legal commentary indicate that, in the trade, this type of clause operates to hold each party harmless and precludes overlapping coverage. A contract should be construed not by what words mean literally, but rather how they are intended to operate practically on the subject matter. *See Marso v. Mankato Clinic, Ltd.,* 278 Minn. 104, 115, 153 N.W.2d 281, 289 (1967).

■ In addition, the parties intended to hold each other harmless from losses to the extent covered by insurance. The intent of the parties is relevant in construing the contract. *See Fena v. Wickstrom,* 348 N.W.2d 389, 390 (Minn.Ct.App.1984). Because of the custom in the trade and the parties' intent, the lease provision was appropriately construed by the trial court as holding the parties harmless and, in effect, precluding the insurer's subrogation rights.

## · DECISION

The trial court is affirmed.