RICHMOND STEEL, INC., Plaintiff,

v.

LEGAL AND GENERAL ASSURANCE SOCIETY, LTD., et al., Defendants.

Civ. No. 90–2334 HL.

United States District Court,
D. Puerto Rico.

Feb. 26, 1993.

See also 799 F.Supp. 234.

Charles A. Cordero, Cordero, Miranda & Pinto, San Juan, PR, for Richmond Steel, Inc.

Luis M. Angelet–Frau, Vazquez, Vizcarrondo & Angelet, San Juan, PR, for Legal & Gen. Assur. Soc., Ltd.

Romano A. Zampierollo–Rheinfel, Rio Piedras, PR, Jorge Marrero–Narvaez, Autoridad Acueductos & Alcantarillados, Santurce, PR, for Puerto Rico Water and Sewer Authority.

Jose M. Biaggi–Junquera, Biaggi & Landron, Mayaguez, PR, for Constructora Lluch, S.E. and Ins. Co. of North America.

Richard A. Lee, Richard Lee Law Office, San Juan, PR, for defendants Lebron Associates, Felipe Lebron P.E., Rene Purcell, Hector Zavala, Pedro A. Marrero, Eduardo Rodriguez and Felipe Lebron.

Jeanette M. Lopez, Urb. Ramirez, for Seaboard Sur. Co.

Amancio Arias–Guardiola, Hato Rey, PR, for cross-defendant Royal Ins. Co. Puerto Rico.

Charles DeMier–LeBlanc, De Corral & De Mier, Hato Rey, PR, for cross-defendant Nat. Union Fire Ins. Co.

Enrique Peral–Soler, Munoz, Boneta, Gonzalez, Arbona, Benitez & Peral, Hato Rey, PR, for cross-defendant Valentin Eng. Valentin Beato.

Jose E. Otero–Matos, Irizarri & Otero, San Juan, PR, for CNA Cas. of PR.

Cristobal Colon, San Juan, PR, for Carlos Ortiz.

Jaime E. Sifre–Rodriguez, San Juan, PR, for Jose C. Agrelot.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion for summary judgment (Docket No. 149) by Plaintiff Richmond Steel, Inc. ("RSI") to dismiss the counterclaim of Defendant Legal and General Assurance Society, Ltd. ("LGAS"). RSI, a construction firm based in Texas, brought this claim for declaratory relief and monetary damages based on diversity jurisdiction[1]. This case arises out of the construction of a project known as the "Mayaguez Composting Facility." In 1987 Puerto Rico Aqueduct and Sewer Authority ("PRASA") contracted the engineering and architecture firm of Lebrón Associates ("Lebrón") to design the facility. PRASA also contracted Constructora Lluch, S.E., ("Lluch") in May 1988 to build the facility. In October 1988, Lluch subcontracted RSI to manufacture and install the steel components of the facility. In October 1989, before RSI completed its work, a portion of the steel structure collapsed.

RSI seeks the following declarations: that Lebrón and Valentin Beato, an engineer who participated in the preparation of the project's designs, were negligent in their design work; that this negligence caused the collapse; that PRASA is liable for RSI's damages because the former negligently approved these designs; that Lluch contributed to the collapse by its negligence in building the structure's center columns, preparing the soil, and laying the foundation; that the respective insurers of Lebrón and Lluch are

1. 28 U.S.C.A. § 1332 (West Supp.1992).

also liable to RSI; and that RSI is not liable to LGAS. A flurry of cross-claims, counter-claims, and third-party claims has followed. Included in this flurry is LGAS' counterclaim against RSI. On January 26, 1989, three months after Lluch and RSI entered into their contract, LGAS issued to Lluch a build-er's risk policy covering the construction pro-ject. The policy also named PRASA as an insured. After the collapse of the structure, LGAS paid Lluch $891,972.00 under the poli-cy. In its counterclaim LGAS, as subrogee to Lluch, seeks to recover from RSI the amount paid to Lluch. LGAS alleges that the collapse of the structure was caused by RSI's negligence.

RSI has moved for summary judgment to dismiss LGAS' counterclaim. RSI makes two arguments. First, that it was an insured under the LGAS policy, and therefore LGAS cannot bring a subrogation action against its own insured. The second argument is based on Article 13.5 of the contract between Lluch and RSI. This article provides for a waiver of claims between the parties to the construc-tion. RSI claims that this article waives LGAS' right to bring a claim against it. LGAS argues that (1) RSI's failure to plead these defenses in its answer to LGAS' coun-terclaim precludes it from raising them now; (2) because Lluch contracted with Richmond Steel Erectors, rather than Richmond Steel, Inc., RSI is not protected by the contract; (3) the waiver of subrogation clause in the contract is not binding on LGAS; and (4) because RSI is not named as an insured in Lluch's builder's risk policy, RSI cannot be an insured. The Court agrees with LGAS that RSI is not an insured under the policy. However, the Court disagrees with all of LGAS' remaining arguments. Accordingly, it grants RSI's motion for summary judg-ment.

## DISCUSSION

### A. Failure to plead defenses in the answer

At the outset, the Court notes that sum-mary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). LGAS claims that RSI's failure to plead defenses in the answer preclude it from raising them in a motion for summary judgment. A review of the chronology of the pleadings is necessary before proceeding to a determination on this claim. On October 10, 1990, RSI filed its complaint. Among its prayers for relief was a request that the Court declare that LGAS' claim against RSI for the $891,972 was un-founded. On December 21, 1990, LGAS filed its counterclaim, together with its answer, alleging that the collapse of the structure was caused by RSI's negligence. RSI an-swered the counterclaim on January 9, 1991. It plead the following affirmative defenses:

1. The Counter Complaint fails to state a claim upon which relief can be granted.

2. The claim described in the Counter Complaint is time-barred.

3. The collapse described in the counter claim was the fault and negligence of per-sons and/or entities beyond the control of RSI.

4. RSI raises by reference as affirmative defenses the substantive allegations de-scribed in the complaint. (Docket No. 7).

On August 30, 1991, RSI tendered an amended complaint. In the amended com-plaint, which was not accepted until March 23, 1992, RSI prayed that the Court declare that it was not liable to LGAS because of the waiver of subrogation clause in the contract between Lluch and LGAS. On February 24, 1992, after the filing of the amended com-plaint but before its being entered on the docket, RSI filed the motion for summary judgment that is currently before the Court. LGAS filed an opposition to the motion on March 19, 1992. In its opposition, LGAS did not raise the claim that RSI's failure to plead affirmative defenses in the answer precluded it from raising them in a motion for summary judgment. In a proposed pretrial order filed on March 23, 1992 by all the parties, includ-ing LGAS, RSI stated that the waiver of subrogation clause protected it from LGAS' claim. By a motion filed September 2, 1992, LGAS raised the issue of whether RSI has failed to plead the affirmative defenses. The

trial in this case is set for June 21, 1993.[2]

Under Fed.R.Civ.P. 8(c), certain affirmative defenses must be set forth in the pleadings. *Depositors Trust Co. v. Slobusky*, 692 F.2d 205, 208 (1st Cir.1982). Failure to raise an affirmative defense in the pleadings generally results in the forced waiver of that defense and its exclusion from the case. *Federal Deposit Ins. Corp. v. Ramirez–Rivera*, 869 F.2d 624, 626 (1st Cir.1989); *Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810, 813 (1st Cir.1975); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278, at 477 (2d ed. 1990). In the case before the Court, RSI raised the waiver of subrogation rights defense in its amended complaint. RSI did not plead this defense in its answer to LGAS' counterclaim, but it did raise the defense in a pleading. Accordingly, the Court will allow RSI to raise this defense in its motion for summary judgment.

Assuming *arguendo* that RSI's raising of the defense in its amended complaint—instead of in its answer—is not a proper pleading, the Court would still allow RSI to raise this defense. Courts should avoid hypertechnicality in pleading requirements and focus instead on the purpose of pleading rules. *Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (11th Cir.1988); *Allied Chemical Corp. v. MacKay*, 695 F.2d 854, 855–56 (5th Cir.1983); *Polles v. Federal Deposit Ins. Corp.*, 749 F.Supp. 136, 138–39 (N.D.Miss.1990). The purpose of Rule 8(c) is to give the opposing party notice of the issue and opportunity to argue his position. *Blonder–Tongue Lab., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971); *Hassan*, 842 F.2d at 263. An unplead affirmative defense may be allowed if the opposing party is not prejudiced in his ability to respond. *Charpentier v. Godsil*, 937 F.2d 859, 863–64 (3rd Cir.1991); *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 544 (11th Cir.1991); 5 Charles A. Wright & Arthur R. Miller, *supra*, § 1278, at 502.

In the case before the Court RSI first raised the waiver of subrogation defense in its amended complaint which was tendered on August 30, 1991 and docketed March 23, 1992. It later raised the issue in its motion for summary judgment of February 24, 1992 and in the proposed pretrial order of March 23, 1992. Counsel for LGAS signed this proposed pretrial order. In LGAS' initial opposition to the motion for summary judgment, it did not claim that it was prejudiced in its ability to adequately respond to RSI's motion. This opposition was filed on March 19, 1992, more than a year before the trial date. LGAS did not raise the issue of a failure to plead a defense until a motion filed on September 2, 1992, more than six months after RSI filed its motion for summary judgment. As stated above, the trial in this case is set for June 21, 1993, more than a year after RSI filed its motion. At the earliest, LGAS was notified of RSI's waiver of subrogation defense by August 30, 1991, the date the amended complaint was tendered. At the latest LGAS was put on notice by February 24, 1992, the date the motion for summary judgment was filed. In either case, RSI raised the defense sufficiently early enough to give LGAS ample time and opportunity to respond. LGAS was first noticed of this defense over a year before the trial date. Therefore, it is not prejudiced in its ability to oppose the defense. This conclusion is supported by the fact that LGAS opposed the motion on substantive grounds before it raised the procedural issue. Accordingly, the Court denies LGAS' argument that RSI's waiver of subrogation defense should be excluded.

### B. The legal identity of Richmond Steel Erectors

LGAS also argues that because Lluch's contract was with Richmond Steel Erectors ("RSE"), and not Richmond Steel, Inc., RSI cannot benefit from the waiver of subrogation clause. It is true that the name "Richmond Steel Erectors" appears on

---

**2.** The trial in this case was originally set for October 24, 1991. However, because of the complexity of this case, the parties have requested a number of continuances. The trial was rescheduled for April 22, 1992, and then for September 21, 1992, before finally being set for June 21, 1993.

Lluch's subcontract for the manufacturing and installation of the facility's steel components. However, RSI has submitted evidence that Richmond Steel Erectors is a division of RSI with no legal identity separate from RSI. Docket No. 197. LGAS has submitted no evidence to controvert the allegation that RSE and RSI are one and the same. The statements or arguments in a memorandum of law are not, without more, competent to oppose a motion for summary judgment. *López v. Corporación Azucarera de Puerto Rico,* 938 F.2d 1510, 1515–16 n. 11 (1st Cir.1991).

█ This identity of entities is further supported by LGAS' own submissions in its opposition to the motion for summary judgment. Article 13.1 of the contract between Lluch, the general contractor, and RSE, the subcontractor, requires that the subcontractor purchase certain types of insurance. LGAS has submitted a copy of the policy that the subcontractor took out. The named insured on the policy is Richmond Steel, Inc., not Richmond Steel Erectors. Docket No. 169, exhibit D. LGAS has failed to show that RSI and RSE are not identical legal entities. Therefore, the Court rejects LGAS' claim that RSI is not protected by the waiver of subrogation rights.

*C.  RSI as an insured under the LGAS policy*

RSI claims that it is an insured party under Lluch's builder's risk policy with LGAS, and therefore LGAS cannot subrogate against it. The policy explicitly names Lluch and PRASA as insureds.[3] The policy describes the insured property as follows:

Ι.  The Insured Property

(i) Contract works comprising the permanent and temporary works forming part of the contract including materials incorporated or to be incorporated therein.

(ii) Contractor's Plant and Equipment belonging to the Insured comprising tools tackle and Contractor's equipment

brought on to the contract site for the purpose of the contract, but excluding:

(a) any mechanically propelled vehicle (which expression shall include a trailer attached thereto) except one which during the period of Insurance is used solely on the Contract Site or any other such vehicle whilst it is being used on the Contract Site as a tool of trade.

(b) any shipcraft or aircraft.

II.  The Specification

The insurance is in respect of loss of or damage to the Insured Property from any cause whilst it is on the Contract Site from the completion of unloading thereat and continuously thereafter.

Endorsement number 7 of the policy specifies as follows:

In consideration of an additional premium of [illegible], it is hereby understood and agreed that this policy is amended to cover the following:

On a construction of six buildings of one story each of concrete construction and steel roof to be occupied by Puerto Rico Aqueduct Authority consisting of:

1. Compost building
2. [illegible] building (2)
3. Office administrative building
4. Maintenance building
5. Guard booth

All located at Road 342 Km 4.5 Mayaguez, Puerto Rico.

The total cost is $2,753,140.

The policy mentions neither RSI specifically nor subcontractors in general.

█ An insurer has no right of subrogation against an insured, even if the insured's protection is indirect. *Frank Briscoe Co. v. Georgia Sprinkler Co.,* 713 F.2d 1500, 1502 (11th Cir.1983); 6A John Appleman & Jean Appleman, *Insurance Law and Practice,* § 4055, at 146 (Rev. ed. 1972); *see generally* Jay M. Zitter, Annotation, *Insurance: Subrogation of Insurer Compensating Owner or Contractor for loss under "Builder's Risk" policy against Allegedly Negligent Contractor or Subcontractor,* 22 A.L.R.4th 701, 706–

---

**3.** Lluch is named as an insured in the body of the policy itself. Endorsement No. 6 of the policy made PRASA an additional insured. Docket No. 169, exhibit B.

08 (1983).[4] Thus, if RSI is an insured under Lluch's insurance policy, LGAS would be precluded from bringing an action against it. RSI claims that, while it is not expressly named in the policy, the policy's detailed description of the construction project could be construed to afford RSI coverage under the policy. The Court disagrees.

Courts have held in a number of situations that an owner or general contractor's insurance on a construction project covers a subcontractor. Where, for example, the construction contract required that the owner or contractor obtain insurance covering the subcontractor, the insurer could not subrogate against the subcontractor. See Tokio Marine & Fire Ins. v. Employers Ins. of Wausau, 786 F.2d 101, 104–05 (2nd Cir. 1986); South Tippecanoe Sch. Bldg. v. Shambaugh & Son, 182 Ind.App. 350, 395 N.E.2d 320, 323, 328–33 (1979); Olinkraft, Inc. v. Anco Insulation, Inc., 376 So.2d 1301, 1302–03 (La.Ct.App.1979). Where the insurance policy provided some coverage to subcontractors, no subrogation against them was allowed. See Briscoe, 713 F.2d at 1501–04; Bd. of Education of Jordan Sch. Dist. v. Hales, 566 P.2d 1246, 1246–48 (Utah 1977); Baugh–Belarde Constr. Co. v. College Utilities, 561 P.2d 1211, 1213–16 (Alaska 1977). And where the owner or contractor's insurance policy had language that said it covered the "property of others," the insurer could not bring a subrogation action against the subcontractor. See Transamerica Ins. Co. v. Gage Plumbing & Heating Co., 433 F.2d 1051, 1053–56 (10th Cir.1970) (Policy stated that, unless other coverage were available, it would cover "builders' machinery, tools and equipment owned by the Insured or similar property of others for which the Insured is legally liable....") (emphasis added); J.F. Shea Co. v. Hynds Plumbing & Heating, 619 P.2d 1207, 1209–10 (Nevada 1980) (Policy covered "materials, equipment and supplies and temporary structures ... and similar properties belonging to others for which the insured is liable.") (emphasis added); United States Fire Ins. Co. v. Beach, 275 So.2d 473, 474–76 (La.Ct.App.1973) (Policy provided that, unless other coverage were available, it would cover "builders' machinery, tools and equipment owned by the insured or similar property of others....") (emphasis added).

The circumstances in the case before the Court do not lend themselves to any of the above reasons to include a subcontractor as an insured. The construction contract did not require that Lluch obtain insurance on the project. The policy named only Lluch and PRASA; it nowhere mentions RSI or subcontractors in general. And lastly, the policy's language is not sufficiently expansive to afford RSI coverage under the policy. The policy describes the construction project and states that it covers Lluch's property and equipment. However it does not refer to "property of others," a clause that would indicate that subcontractors are also insureds under a policy. Accordingly, the Court finds that RSI is not an insured under Lluch's policy with LGAS.

D. The waiver of subrogation clause

RSI claims that Article 13.5 of its contract with Lluch precludes LGAS from bringing a subrogation action. Subrogation is the right of an insurer to be put in the position of its insured so that it may pursue recovery from any third parties who are legally responsible to the insured for a loss paid by the insurer. 16 Couch on Insurance § 61:1, at 75 (Rev.2d ed. 1983). The subrogated insurer stands in the same position as the subrogor insured; the insurer cannot have rights greater than those of the insured. Id. § 61:36, at 119–20. Subrogation is intended to allow the insurer to affix responsibility for a loss on the party who caused it. Travelers Indem. Co. v. United States, 543 F.2d 71, 75 (9th Cir.1976); 16 Couch on Insurance, § 61:18, at 93.

RSI relies on Article 13.5, which reads as follows:

Waivers of Subrogation. The Contractor and Subcontractor waive all rights

4. While insurance issues in Puerto Rico are generally governed by Title 26, Puerto Rico's Insurance Code, it is appropriate to look to American law for guidance as well. Municipality of San Juan v. Great American Ins. Co., 117 D.P.R. 632, 635–36, 17 Official Translations 757, 761–62 (1986).

against (1) each other and any of their Subcontractors, Sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other perils to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

The purpose of a waiver of subrogation clause in construction contracts is to avoid disruptions and disputes between the parties working on a project. *Commercial Union Ins. v. Bituminous Casualty Corp.*, 851 F.2d 98, 101 (3rd Cir.1988); *Tokio Marine*, 786 F.2d at 104. The clause is also meant to require a party to the contract to provide property insurance for all the parties. *Industrial Risk v. Garlock Equipment*, 576 So.2d 652, 656 (Alabama 1991).

■ Generally, when a construction contract contains a waiver of subrogation between the parties, this clause precludes an insured party's insurer from bringing a subrogation action against one of the other parties to the contract. *See, e.g., Bituminous Casualty*, 851 F.2d at 100–01. Courts in numerous other construction cases have agreed with this holding. *See Tokio Marine*, 786 F.2d at 104–05; *Garlock*, 576 So.2d at 657; *United States Fidelity & Guar. v. Farrar's Plumbing*, 158 Ariz. 354, 355–56, 762

P.2d 641, 642–43 (Ct.App.1988); *Haemonetics Corp. v. Brophy & Phillips Co.*, 23 Mass. App.Ct. 254, 501 N.E.2d 524, 525–26 (1986); *Brodsky v. Princemont Constr. Co.*, 30 Md. App. 569, 354 A.2d 440, 443–45 (Ct. Spec.App.1976). *See also Hartford v. Burns Int'l Sec. Serv.*, 172 Ill.App.3d 184, 122 Ill. Dec. 204, 526 N.E.2d 463 (1988) (Waiver of subrogation clause in a contract to provide security services precluded insurer from subrogating against the security provider for its alleged negligence.); *Millican v. Wienker Carpet Serv.*, 44 Wash.App. 409, 722 P.2d 861 (1986) (Waiver of subrogation rights in a lease bound the tenant's insurers.); *Fortin v. Nebel Heating Corp.*, 12 Mass.App. 1006, 429 N.E.2d 363 (1981) (Waiver of subrogation in a construction contract mentioned only the owner and the contractor; if the clause had also mentioned the subcontractor, owner's insurer would not have been able to proceed by subrogation.)

■ In the case before the Court, Lluch waived, in Article 13.5 of the contract, its rights against RSI to the extent that Lluch's losses were covered by insurance. Lluch collected $891,972 on its insurance policy with LGAS for the damages owing to the structure's collapse. Lluch is prevented by Article 13.5 from bringing an action against RSI for these damages. LGAS can only assume the same rights, but no more, that Lluch had. Therefore, LGAS is also prevented by Article 13.5 from bringing an action against RSI for these damages. This result may seem unduly harsh for LGAS. However, LGAS issued its policy on the construction project in January 1989, three months *after* Lluch agreed to the contract waiving its subrogation rights against RSI. When LGAS issued a policy on this construction project it should have been aware that Lluch had entered into contracts with third parties. The clause in question put the risk of loss on the parties' insurers. Therefore, LGAS cannot now collect from RSI.

Courts have held that an owner's insurer was precluded from subrogation based on two grounds: one, a requirement in the construction contract that the owner obtain insurance, and two, the waiver of subrogation

clause in the contract. *See, e.g., Tokio Marine,* 786 F.2d at 104–05; *Farrar's Plumbing,* 158 Ariz. at 355–56, 762 P.2d at 642–43; *Brodsky,* 354 A.2d at 445. An obligation on the owner to get insurance means that the parties would look to that insurance for protection. *Farrar's Plumbing,* 158 Ariz. at 355, 762 P.2d at 642. Here, by contrast, the contract put the obligation for obtaining insurance on RSI, the subcontractor who is now claiming to be protected by the fact that Lluch had insurance. The Court finds that this distinction does not change the outcome here. First, the type of insurance that the construction contract required RSI to obtain was primarily liability insurance. *See* Article 13.1, exhibit 3 of the contract. Lluch's policy with LGAS was property insurance. Liability insurance generally covers damage to third parties. *Tokio Marine,* 786 F.2d at 104. Where an owner had property insurance, the subcontractor had liability insurance, and the construction contract contained a waiver of subrogation provision, the owner's insurer could not subrogate. *See id.* at 104–05.

Second, the language of the construction contract clearly indicates that the parties waived their rights against each other. The waiver of subrogation clause states, "The Contractor and Subcontractor *waive all rights against (1) each other* ... for damages caused by fire or other perils *to the extent covered by* property insurance provided under the Prime Contract or *other property insurance applicable to the Work ....*" (emphasis added). The record does not indicate what insurance is provided by the Prime Contract, the contract between PRASA and Lluch. The record does indicate, however, that Lluch had property insurance applicable to the construction site. Lluch collected on this insurance. Accordingly, to the extent that Lluch was covered, it and its subrogee insurer are precluded from bringing an action against RSI.

LGAS also claims that the last sentence of Article 13.5 indicates that the article should not be binding on it. That sentence reads:

A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

LGAS claims that because a paying insurance company could not be a "person or entity" as depicted in this sentence, the waiver of subrogation cannot be effective against them. The Court agrees that the "person or entity" which this phrase mentions does not refer to paying insurance companies. Nothing in Article 13.5 mentions insurance companies. However, that does not mean that LGAS may subrogate against RSI. The persons or entities that this sentence is alluding to are sub-subcontractors, architects, and other parties involved in the construction. The waiver of subrogation is intended to be effective as to these other parties as well. This last sentence does not conflict with the rest of the article.

LGAS further claims that there are ambiguities in the construction contract which justify referring to evidence of the parties' intentions. Specifically, LGAS argues that Article 4.6.1 of the contract conflicts with the waiver of subrogation clause. Article 4.6.1 reads as follows:

To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, *provided that* such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (*other than the Work itself*) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified

hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

(emphasis added). LGAS seems to be arguing that the conflict arises out of the fact that Article 4.6.1 obliges RSI to indemnify Lluch for all losses while Article 13.5 relieves RSI of any such obligation. The Court disagrees. Article 4.6.1 specifically excludes RSI from the duty to indemnify Lluch for damages to the construction itself. Similarly, article 13.5 protects RSI from actions by Lluch for damages to the construction. Thus, the two clauses are consistent. A party may not defeat a motion for summary judgment by invoking the parties' intentions to introduce an interpretation of a contact that is inconsistent with its clear terms. *Caribbean Ins. Services v. American Bankers Life*, 754 F.2d 2, 7 n. 6 (1st Cir.1985). The terms of this contract are clear. Therefore, it is not necessary to refer to additional evidence of the parties' intentions.

Lastly, the Court notes that pursuant to Lluch's claim to LGAS for damages to the construction site, Lluch transferred to LGAS all rights it had against third parties for the damages. Lluch also warranted that "no release has been given or will be given or settlement or compromises made or agreed upon with any third party who may be liable in damages to the insured with respect to" the claim. A party cannot obtain by subrogation rights greater than what the subrogor originally had. 16 *Couch on Insurance*, § 61:36, at 119–20. Because of the waiver of subrogation clause in the construction contract, Lluch could not bring an action against RSI for damages that were covered by insurance. Accordingly, Lluch could not transfer to LGAS the right to bring such an action.

WHEREFORE, the Court grants RSI's motion for summary judgment.

IT IS SO ORDERED.