SAMUEL R. LADEN, INCORPORATED, A CORPORATION OF NEW JERSEY, PLAINTIFF, v. LIDGERWOOD ESTATES, INCORPORATED, A CORPORATION OF NEW JERSEY, DEFENDANT.

Decided June 11, 1937.

For the motion, *Lum, Tamblyn & Fairlie.*

*Contra, Hannoch & Lasser.*

SMITH, JOSEPH L., C. C. J. This comes on a motion to strike the plaintiff's complaint, on the ground that the same is sham and frivolous. The complaint is based upon alleged commissions earned by the plaintiff for negotiating a sale of property for and on behalf of the defendant.

The complaint is in two counts; the first, alleging a contract between the defendant, the vendor, and the plaintiff,

the agent, to procure a purchaser for the premises in question, the complaint averring that, for these services, "the defendant agreed to pay to the plaintiff a commission of $1,000, at the time of the delivery of the deed and the closing of the title." It is further alleged therein that the plaintiff procured a purchaser for the premises, and that a contract was entered into between the vendor and the purchaser; that the purchaser was ready, willing and able to enter into the said contract and purchase the property for the sum agreed upon, to wit: $20,500; that by the terms of this contract between the vendor and the vendee, the vendor, the defendant herein, agreed as follows:

Paragraph 11. "The vendor recognizes Samuel R. Laden, Inc., as the authorized broker who negotiated this sale and agrees to pay said Samuel R. Laden a commission of $1,000 at the time of delivery of the deed and the closing of title."

The second count is based upon an agreement between the vendor and the vendee for the benefit of the plaintiff, based upon the same paragraph 11 above quoted.

Before referring to the authorities on the question of construction, we may consider another point raised by the defense, which is: that the failure to close title was due to the unjustifiable refusal of the purchaser, procured by the plaintiff, to accept the deed; that, therefore, the plaintiff had failed to procure a purchaser, ready, willing and able to take title. According to the affidavits submitted upon the motion, it appears that the purchaser refused to close title because the title search disclosed a mortgage open of record, dated January 7th, 1876, and recorded March 29th, 1878. It appears, however, that no payments had ever been made upon this mortgage, and proof of this fact, by way of affidavits, was submitted by the defendant vendor to the purchaser; if the mortgage in question was the only reason for not closing title—and the affidavits disclose no other reason—then the purchaser's refusal to close title was not justifiable in law.

The identical question was decided in *Bondy* v. *Percival* (*Supreme Court*), 99 *N. J. L.* 309; 123 *Atl. Rep.* 873, where

mortgages, open of record, having had no payments made on account for over sixty years, were held to constitute no encumbrance upon the vendor's title. Chief Justice Gummere, speaking for the court, said (at *p.* 312) :

"When the bar of the statute is complete the estate of the mortgagor is freed from any imperfection created by the mortgage."

Assuming, therefore, that closing of title failed by default of the purchaser, does that fact preclude the broker from recovering his commission if the words in question, relative to delivery of the deed and closing of title, are reasonably construed, not as creating a contingency or condition precedent, but as designating the time of payment?

In practically every case decided between broker and principal, where language similar to that used in the case *sub judice* has been construed to mean a designation of the time of payment and not a contingency, we find that closing of title failed by fault of the principal.

That was the situation in *Klipper* v. *Schlossberg,* 96 *N. J. L.* 397; 115 *Atl. Rep.* 345; *Taylor & Rose, Inc.,* v. *Buonincontri,* 101 *N. J. L.* 278; 128 *Atl. Rep.* 603; *Ludwig* v. *Aberbach,* 4 *N. J. Mis. R.* 169; 132 *Atl. Rep.* 241; *Mahlenbrock* v. *Stonehell Realty Co.,* 104 *N. J. L.* 176; 138 *Atl. Rep.* 875; *Lehrhoff* v. *Schwartsky,* 2 *N. J. Mis. R.* 353; 125 *Atl. Rep.* 496; *Fieldman* v. *Thomas,* 10 *N. J. Mis. R.* 48; 157 *Atl. Rep.* 554; *Kram* v. *Losito,* 105 *N. J. L.* 588; 147 *Atl. Rep.* 465.

However, if a reasonable construction of the terms involved indicates a designation of the time of payment, rather than a condition precedent or a contingency, we can no longer be influenced by the question as to through whose fault title failed to close, there being no contention that there was any lack of good faith, either in the agreement to purchase, or in the refusal to close title.

Thus, in *Tucker* v. *Mahaffey et al.,* 6 *N. J. Mis. R.* 17; 139 *Atl. Rep.* 806, the court says (at *p.* 20) :

"Next, it is said that another question of fact was whether the failure to make final settlement grew out of any fault of the defendants. This seems to be completely answered in

the discussion above, that it was immaterial whose fault it was that final settlement did not take place, since the payment of commission was not made contingent upon a final settlement taking place."

It appears, therefore, that the construction of the terms involved in the case is the sole question to be determined.

There are several decisions of our courts which have construed these words, and words of similar import, as merely designating a time and not constituting conditions precedent. The defendant, however, makes this distinction, namely: that, in these cases, which will be discussed hereafter, the phrase relative to the payment and the time of payment is separated from the rest of the sentence acknowledging the debt or promising the payment, by a comma, a semi-colon, or some similar punctuation mark; the point being made by the defendant, that in this manner the thought as expressed in the sentence, concerning the promise to pay, or the acknowledgment of the debt, is complete, without taking into consideration the time or the occasion of payment, and that in the case *sub judice* such punctuation marks being omitted, the promise to pay and the occasion of the payment form one continuous and inseparable thought.

It seems to the court that to make paragraph 11 clear, we should also take into consideration paragraph 10 of the contract, which reads as follows:

"Said deed shall be delivered and said sum of Seventeen thousand five hundred dollars ($17,500) paid at the offices of Lum, Tamblyn & Fairlie, 14th Floor, 605 Broad Street, Newark, N. J., sixty (60) days from the date of this agreement, at 11 o'clock in the forenoon or at such earlier time as may be mutually agreed upon."

In the light of paragraph 10, it appears clear that the phrase, "at the time of the delivery of the deed and the closing of title" as used in paragraph 11, refers to a definite date, as given in paragraph 10, to wit: "Sixty (60) days from the date of the agreement at 11 o'clock in the forenoon, or at such earlier time as may mutually be agreed upon." If paragraph 11 had read: "* * * to pay the said Samuel R. Laden, Inc., a commission of $1,000, sixty days from the date

of this agreement, at 11 o'clock in the forenoon, or at such earlier time as may be mutually agreed upon," there could be no serious question that there would be nothing more than a designation of time for payment and not a condition precedent. The phrase, therefore, "at the time of the delivery of the deed and the closing of title," definitely referring to a time given and expressed in the contract, cannot reasonably be construed to mean other than a designation of time.

It is also to be noted that the agreement to be construed is not one of a promise by the defendant to pay upon a certain occasion or happening of an event; it is an acknowledgment of an accomplished fact, of a consideration already given for the promise to pay; it is, therefore, an acknowledgment of a debt by reason of the agreed services having been performed.

The defendant relies upon the case of *Hinds* v. *Henry*, 36 *N. J. L.* 328; in that case the vendor agreed to pay the broker anything over and above the sum of $12,000 which he, the broker, might succeed in *obtaining*; and, a sale having been made, at an advance of $3,000 over the limit, the vendor agreed to pay the said $3,000.

"The first half thereof [say $1,500] at the time that the purchasers of the property hereinbefore mentioned shall pay over the first half of the purchase money, and the balance at the expiration of one year from the date of the deed for said property, without interest."

This was construed as indicating a contingency. It will be noted that the broker's commission depended not upon negotiating the sale, but upon "obtaining" a sum in excess of $12,000. The payment of the commission was to be made in proportion with the payment of the purchase price; *i. e.,* one-half the commission to be paid at the time that the purchaser pays one-half the purchase price; the words used are: "at the time that the purchaser * * * pay over the first half * * *." The phrase, "at the time that" means, not at the hour of, but upon the occasion or in the event of, the payment of the purchase price. The use of the adverb "that," indicates a meaning of contingency. Thus, the payment of the commission was made dependent upon payment of the purchase price.

The case of *Hinds* v. *Henry, supra,* therefore, does not control the situation in the case *sub judice.*

As for the case of *Morse* v. *Conley,* 83 *N. J. L.* 416, also cited by the defendant, there the agreement was to pay a commission "for services rendered in the matter of the consummation of the sale at the time of the consummation of the same." The court, from a reading of the entire contract, concluded that the parties contemplated the passing of title before payment of the commission; the "consummation" never having taken place, no commission was due. The case is not applicable.

Neither is the case of *Leschziner* v. *Bauman,* 83 *N. J. L.* 743, applicable, for in that case, not only title failed to pass, but, in addition, plaintiff never made the sale.

An agreement for exchange was substituted, which agreement failed because the buyer's property, to be given in exchange, was faulty in title.

The case of *Taylor & Rose, Inc.,* v. *Buonincontri, supra,* is controlling. There, the agreement was evidenced by a memo as follows:

"In consideration of your having negotiated the purchase of No. 38 Arlington Avenue, Newark, N. J., for me, I hereby agree to pay Taylor & Rose, Inc., a commission of three hundred dollars ($300) for their services. This payment to be made in cash at the time of passing of title to the above referred property."

Mr. Justice Minturn, construing the agreement, said (at *p.* 279):

"The contract *sub judice* is based as a consideration not upon the passing of the title, but 'in consideration of your having negotiated in purchase' of the property. Such was the effect of our decision in *Dickinson* v. *Walters,* 100 *N. J. L.* 62. The subsequent language of the contract 'at the time of passing title' to the property must be construed to indicate the time when the commission will be payable, and not serve as a barrier to the payment of the commissions under any and all circumstance."

In the instant case, there is stronger reason for holding that the expression "at the time of delivery of the deed and

the closing of title" refers to a point in the calendar and not to an event, because the same agreement, as previously noted, designates the date for closing.

In *Kram* v. *Losito, supra,* Mr. Justice Lloyd, speaking for the Court of Errors and Appeals, and construing a similar agreement, said (at *p.* 589) :

"Through the efforts of respondent the appellants and the purchasers, Green and Friedlander, were induced to enter into a binding agreement for the sale of property involved. In that agreement respondent's commission is made payable when the balance of the initial payment of the purchase price is made. The contract recognizes that the broker has earned his commission by bringing the parties together and in inducing the making of a formal contract for which the defendant owes him the commission, but for convenience the commission is payable when a portion of the purchase money is to be paid—at the time of settlement. The agreement itself called for settlement December 1st, 1926. It was not carried out because of the seller's default in complying with the terms of the agreement of sale, but this could not defeat the broker's right to the compensation agreed on. The time having arrived when the commission should have been paid, the respondent's right of action accrued, the learned trial judge properly found in his favor and the judgment entered on this finding is affirmed."

To the same effect are *Mahlenbrook* v. *Stonehell, supra,* and *Tucker* v. *Mahaffey, supra.*

The general rule is that agreements such as involved in this case are to be construed as designating the time of payment and not a contingency unless the contrary intent is made clear.

Thus, in *Dickinson* v. *Walters,* 100 *N. J. L.* 62; 125 *Atl. Rep.* 235, the court said (at *p.* 65) :

"In order to absolve a party from the payment of commissions, it must clearly appear by the contract with his broker that the payment of commissions was made contingent upon the actual transfer of title."

And in *Ludwig* v. *Aberbach, supra,* it is said (at *p.* 171) :

"If it was intended that no commission was to be paid

unless an actual sale was consummated by the delivery of a deed it should have been explicitly so stated in the contract."

To the same effect, see *Lehrhoff* v. *Schwartsky, supra.*

For the reasons given above, the motion to strike the complaint will be denied.