**BUSHNELL REAL ESTATE, INC., Plaintiff and Respondent,**

v.

**Robert S. NIELSON and Bradley J. Nielson, Defendants and Appellants.**

**No. 18284.**

Supreme Court of Utah.

Oct. 24, 1983.

Marcus Taylor of Labrum & Taylor, Salt Lake City, for defendants and appellants.

Bruce Findlay, Richfield, for plaintiff and respondent.

DURHAM, Justice:

This is an appeal from a summary judgment granted to the plaintiff, Bushnell Real Estate, Inc., against the defendants, Robert S. and Bradley J. Nielson. The plaintiff sued to collect on a promissory note from the defendants for the unpaid portion of the plaintiff's broker's commission. The defendants admitted making and delivering the note, but denied liability on the grounds that the note was a "conditional contract" and that the condition was unfulfilled. At a hearing on the plaintiff's motion for summary judgment, the defendants moved for leave to amend their answer to allege that the note was the obligation of the corporation of which they were principals. The trial court denied the defendants' motion and granted summary judgment. We affirm.

The defendants, father and son, were officers and principal stockholders of N-Bar Corporation, which purchased the "Sandy Ranch" in 1976. In 1978, N-Bar Corporation listed the property for sale with the plaintiff, Bushnell Real Estate, Inc. The plaintiff found a buyer and in December of 1978 the parties met to close the transaction. The property was sold for $850,000, including the land, cattle and personal property. Under the listing agreement, the plaintiff was entitled to a 6% commission or $51,000. There is no evidence indicating a dispute over the amount of the commission due at the time of closing. Nevertheless, the plaintiff received only $15,000 at the time of closing. The Seller's Statement, signed by the defendants for N-Bar Corporation, lists the "realtor service fee" as $51,000 in the form of a $36,000 note and $15,000 paid at closing. Similarly, there is no dispute regarding the reason for this method of payment. The plaintiff agreed to take only $15,000 in cash from the $75,000 down payment because the defendants urgently needed most of the down payment to meet their contract obligation to the previous owners. The following testimony was given in the deposition of Robert S. Nielson:

Q. (plaintiff's counsel) Do you recall why it was that there wasn't enough in that [down payment] to pay the broker's fee?

A. (Mr. Nielson) Well, by the time that the escrow fee had got paid of $50,900.00 and some odd dollars to the [previous owner's] escrow that I was obligated to, it's just as plain as the nose on your face, it wasn't there.

The promissory note, signed by each of the defendants in his capacity as an individual, provided for a payment of $26,000 approximately one month later on January 20, 1979, and a payment of $10,000 on December 15, 1979.

At the closing, the defendants also signed a uniform real estate contract, designating the N-Bar Corporation as seller of the ranch. The contract specified a $50,000 payment at closing ($25,000 had already been received as earnest money and as payment for the cattle) with a $25,000 payment due January 20, 1979, approximately one month later and the following payment schedule: a payment of $65,436.13 on December 15, 1979; a payment of $65,436.13 on December 15, 1980; and eighteen subsequent payments of $68,686.13 each on December 15 annually until paid in full. The defendants signed the contract in their capacities as officers representing N-Bar Corporation. The defendants also signed an escrow agreement that showed N-Bar Corporation as the seller of the property. The escrow agreement provided for the delivery of the real estate contract, the warranty deed and the quitclaim deed to the buyer upon receipt of the total amount of the contract that was to be paid on the dates and in the amounts described in the contract. The agreement also authorized the escrow agent to distribute the first payment of $25,000 to Bushnell Real Estate, with $10,000 "plus accrued interest" to Bushnell Real Estate, presumably from the second payment. The defendants signed

the escrow agreement without any designation of their status as officers of N-Bar Corporation.

The buyer made the payment due the following January, which the escrow agent distributed to the plaintiff. However, the buyer failed to make any subsequent payments and filed for bankruptcy. The defendants failed to pay the $1,000 due on the promissory note (over and above the amount which was distributed through the escrow) and failed to pay the $10,000 due on December 15, 1979. As stated above, the defendants admit making the note but argue first that the note was conditional and second that they signed as representatives of the N-Bar Corporation, not as personal guarantors of the corporation's debt to the plaintiff.

■ This Court has often stated the standard of review for summary judgments.

> In reviewing a summary judgment, we must evaluate all the evidence and all reasonable inferences fairly drawn from the evidence in a light most favorable to the party opposing summary judgment to determine whether there is a material issue of fact to be tried. The movant is entitled to summary judgment only if he is "entitled to a judgment as a matter of law" on the undisputed facts. Utah R.Civ.P. 56(c).

*Horgan v. Industrial Design Corp.,* Utah, 657 P.2d 751, 752 (1982) (citations omitted). In a recent case, we emphasized that "[s]ummary judgment is proper only if the pleadings, depositions, affidavits and admissions show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Lockhart Co. v. Equitable Realty Co.,* Utah, 657 P.2d 1333, 1335 (1983) (quoting *Bowen v. Riverton City,* Utah, 656 P.2d 434 (1982)).

The plaintiff brought suit to collect on the unpaid promissory note. U.C.A., 1953, § 70A–3–307(2) (1980 edition) provides that "[w]hen signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." In their answer the defendants admitted signing the note and admitted that $11,000 of the underlying obligation for which the note was given remains unpaid. Therefore, it was necessary for the defendants to raise a material issue of fact with regard to their asserted defenses in order to avoid summary judgment against them. The defendants argue that the note was "conditional" but they have failed to show any evidence of a condition that would negate the plain intent of the note that the defendants pay the amounts indicated. There is no condition on the face of the note or any reference to another document setting out such a condition. Of the other documents signed at the closing, only the Seller's Statement refers to the note. The "realtor service fee" is listed on that statement as "$51,000—note $36,000" and $15,000 cash paid at the time of closing. There is no indication of any condition or dispute regarding the amount of the commission due at that time. To the contrary, defendant Robert S. Nielson testified:

> Q. (plaintiff's counsel) Yes, okeh, did anybody tell you on behalf of Bushnell that if [the buyer] didn't make his payments, that you'd be released from the note?
>
> A. (Mr. Nielson) No.

The defendants contend that the escrow agreement providing for the distribution of $35,000 to the plaintiff from the buyer's payments shows an agreement that the plaintiff would not look beyond the escrow agreement for payment. Neither the escrow agreement, to which the plaintiff was not a party, nor the promissory note reveal such an intent. In his affidavit, defendant Bradley J. Nielson stated that he and "Robert S. Nielson intended that Plaintiff realize its full commission from payments to be made by [the buyer]." However, the defendants do not assert that this subjective intent was ever communicated to the plaintiff. This unexpressed intent does not bind the plaintiff and its mere recital now does not raise a material issue of fact in the face of the defendants' acknowledgment of the note. *See, e.g., Seale v. Nichols,* Texas, 505 S.W.2d 251 (1974). Furthermore, the de-

fendants' contention that the plaintiff look only to the buyer's payments into escrow for its commission would render the note meaningless and ignore the undisputed benefit received by the defendants from the plaintiff's agreement to defer part of the commission due at closing. On its face, the escrow agreement merely provides for a method of distribution of the payments made by the buyer. The defendants have failed to raise any material issues of fact that counter this construction of the documents.

■ The defendants allege that the trial court erred in ruling that parol evidence was inadmissible to show any special conditions attending the signing or delivery of the note. The defendants cite *Bullfrog Marina, Inc. v. Lentz*, 28 Utah 2d 261, 266, 501 P.2d 266, 270 (1972) for the proposition that "[p]arol testimony is admissible to show the circumstances under which the agreement was made and the purpose for which the instrument was executed." The defendants also quote from a later case in which this Court stated:

> [The parol evidence rule] does not preclude proof of agreements as to collateral matters relating to the contract or its performance, *so long as they are not inconsistent with nor in repudiation of the terms of the written agreement.* Nor does it prevent proof that a party did not perform an obligation *which it was understood and agreed by the parties* was a condition precedent to the contract becoming effective.... Whether there was such a separate agreement, not in contradiction of the written document, is for the trier of fact to determine.

*F.M.A. Financial Corp. v. Hansen Dairy, Inc.,* Utah, 617 P.2d 327, 329 (1980) (footnotes omitted) (emphasis added). This statement of the parol evidence rule does not support the defendants' arguments. First, the defendants' assertion that payment on the promissory note was conditioned on payments made by the buyer is the assertion of an agreement that not only contradicts the plain language found in all of the closing documents, but also directly repudiates the obligation represented in the promissory note. Thus, admission of proof of such an agreement would be contrary to the rule as stated above. Second, the defendants have failed to bring forward any evidence that there existed an understanding or agreement between the parties with regard to such a condition. In fact, the defendants do not allege *any* controversy regarding the obligation to pay the broker's fee at the time of closing, nor can they point to any *discussion* between the parties, let alone an agreement, regarding a condition that would excuse payment on the note. The defendants allege only their subjective and uncommunicated intent that payment be conditional which, as we have stated, is insufficient to raise an issue of fact with regard to the note and its underlying obligation. Under these circumstances, it is not necessary to refer to the parol evidence rule.

■ The defendants also assert that payment on the promissory note was conditional because the plaintiff was obligated to provide a buyer who was "ready, willing and able." The defendants claim that when the buyer failed to make payments, the plaintiff had failed in its obligation and was not entitled to further payment of a commission. The defendants cite a number of cases to support this proposition, but these cases are readily distinguishable. For example, a Nevada case states the following rule regarding the broker's right to a commission:

> While it is the general rule that a broker's commission is earned when a valid and binding contract for sale or purchase is entered into with a ready, willing, and able buyer, even though the buyer later fails or refuses to comply with the agreement, it is equally well established that the payment of a commission may be dependent on a condition beyond that implied by the ordinary broker's contract.
> ....
> This court has frequently held that *if the broker's agreement provides* that his commission is to be paid from purchase money installments, the receipt of the

installments is a condition precedent to recovery.

*Ferrara v. Firsching,* 91 Nev. 254, 533 P.2d 1351, 1352–53 (1975) (emphasis added). In that case the seller and the broker entered into a separate agreement, which specifically provided that the commission would be paid from the purchase money as it was received. The Nevada court held that when the buyer defaulted the broker was not entitled to further payments. In the instant case, the only separate agreement between the plaintiff and the defendants for which there is any evidence is the promissory note, which contains no such condition. In fact, it appears reasonable that the promissory note, signed by the defendants in their individual rather than corporate capacities, was designed to insure the payment of the plaintiff's commission regardless of the buyer's performance. In *Real Estate Exchange v. Kingston,* 18 Utah 2d 254, 255, 420 P.2d 117 (1966), this Court made the same observation as that found in the Nevada case: "Plaintiff *specifically agreed* to obtain its commission from the monthly payments to be made by the [buyers]." (Emphasis added.) Absent a contractual provision, which conditions the right to a commission on the performance of the buyer, the general rule accepted in Utah is that a broker has earned his commission upon the procuring of a buyer who is ready, willing and able and who is accepted by the seller. The broker is not an insurer of the subsequent performance of the contract and is not deprived of his right to a commission by the failure or refusal of the buyer to perform. *See, e.g., F.M.A. Financial Corporation v. Build, Inc.,* 17 Utah 2d 80, 404 P.2d 670 (1965). This is the rule followed in a majority of jurisdictions. The defendants cite *Ellsworth Dobbs, Inc. v. Johnson,* 50 N.J. 528, 236 A.2d 843 (1967), as authority for the proposition that notwithstanding the clarity of the documents in imposing an unconditional liability for broker's fees there should be an implied condition in the note setting up a waiver of fees if the buyer defaults before completion of the transaction. This is a minority rule contrary to the decision in *F.M.A. Financial*

*Corp. v. Build, Inc.,* and is factually distinguishable in that the *Ellsworth Dobbs* decision involved inequality of bargaining power. In the instant case, the parties dealt voluntarily and in a commercial setting. Furthermore, when the defendants originally purchased the property in 1976, they had dealt with the plaintiff. The parties testified that the documents for this sale were essentially identical in terms with the documents for the earlier purchase. The defendants were familiar with the plaintiff, the documents and even the buyer, who apparently was known in the area from previous real property dealings. There was no inequality of bargaining power and we decline to adopt the *Ellsworth Dobbs* rule.

■ Finally, the defendants claim the trial court erred in denying their motion to amend their answer. The defendants desired to allege that they signed the promissory note as representatives of N-Bar Corporation. Rule 15(a) of the Utah Rules of Civil Procedure provides that after the initial period for responses and amendments, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." We have previously stated that "the liberality of the rule is not without limit, particularly when nothing new or of substance is contained in the proposed amendment." *Dupler v. Yates,* 10 Utah 2d 251, 270, 351 P.2d 624, 637 (1960). The underlying purpose of the rule is to insure that judgment is granted "in accordance with the law and the evidence as the ends of justice require," regardless of whether the pleadings conform to the evidence or whether the pleadings are actually amended. *First Security Bank of Utah v. Colonial Ford,* Utah, 597 P.2d 859, 861 (1979). In the instant case, the defendants did not raise this defense until after the plaintiff's motion for summary judgment was on file and until after the plaintiff had taken the deposition of defendant Robert J. Nielson. Furthermore, the defense is based on information possessed by the defendants at the time they made their answer. All of the documents

and the circumstances of their execution were before the court. The promissory note shows the signatures of the defendants without indication of any representational capacity. The defendants did not present evidence or even argue that they objected to signing the note, that they were unaware that "N-Bar Corporation" did not appear on the note, or that the plaintiff gave no value for the defendants' personal obligation. The defendants alleged merely that regardless of the appearance of their personal signatures, they "intended" the obligation to be owed by N-Bar. This assertion is addressed by U.C.A., 1953, § 70A–3–403 (1980 edition), which states that "[a]n authorized representative who signs his own name to an instrument is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity." The trial court also had before it the circumstances of the defendants' original purchase of the property. Although N-Bar Corporation was the purchaser, the sellers in that transaction required the defendants' personal guaranty. It was for the urgent payment of this personal obligation that the defendants needed almost the entire amount of the down payment which, in the usual situation, would have covered the plaintiff's commission. Under these circumstances, the trial court did not abuse its discretion by finding that "there are no facts alleged by defendants from which the court could conclude that the note upon which plaintiff brings suit is unclear, ambiguous, or was procured by fraud, duress or undue influence," or by refusing to grant the defendants' motion to amend.

Judgment was entered for the plaintiff in the sum of $11,000 plus interest in the amount of $4,913.23; plus interest on the judgment at 18% per annum until paid; plus costs in the amount of $37 and attorney fees, the reasonableness of which was not contested, in the amount of $2,500. In *Management Services v. Development Associates,* Utah, 617 P.2d 406 (1980) we adopted the rule of law that "a provision for payment of attorney's fees in a contract includes attorney's fees incurred by the prevailing party on appeal as well as at trial, if action is brought to enforce the contract." *Id.* at 409. Thus, the plaintiff is entitled to attorney fees for its successful defense to this appeal.

This matter is therefore affirmed and remanded to the district court for further proceedings to determine the amount of attorney fees as described above.

HALL, C.J., and OAKS, J., concur.

STEWART and HOWE, JJ., concur in the result.